IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WOODBOLT DISTRIBUTION, LLC D/B/A NUTRABOLT | § § § | |
| *Plaintiff*, | § | CIVIL ACTION NO. |
| VS. | § § § | _____ (JURY DEMANDED) |
| WESTCHESTER FIRE INSURANCE COMPANY | § § § § | |
| *Defendant*. | § § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Woodbolt Distribution, LLC d/b/a Nutrabolt ("***Nutrabolt***") files this Complaint against Defendant Westchester Fire Insurance Company ("***Westchester***").

### PARTIES

1. Plaintiff Nutrabolt is a Delaware limited liability company authorized to do business in Texas with its principal place of business in Bryan, Brazos County, Texas.

2. Westchester is a Pennsylvania corporation whose principal place of business is at 436 Walnut Street, Philadelphia, Pennsylvania 19106. Westchester may be served with process by delivering a copy of the summons and complaint to CT Corporation System, Westchester's registered agent for service of process, at 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

### VENUE AND JURISDICTION

3. Complete diversity exists between Nutrabolt and Westchester.

4. Pursuant to Section 17.042 of the Texas Civil Practice and Remedies Code, Westchester purposefully availed itself of Texas jurisdiction by entering into a contractual relationship with Nutrabolt that required performance in whole or in part in the State of Texas.

5. The amount in controversy exceeds the minimum jurisdictional limits of this court,

exclusive of interest and costs, and specifically exceeds $75,000.00.

6. Venue is proper in this judicial district under 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## BACKGROUND FACTS

**The Insurance Policy**

7. Westchester issued Nutrabolt an employment practices liability insurance policy, policy number G25122264 004, for a policy period from September 30, 2017, to September 30, 2018 (the "Policy"). A true and correct copy of the Policy is attached as Exhibit 1. The Policy includes a policy limit of $1,000,000 aggregate limit for all Loss under the Employment Practices coverage part and a retention of $25,000 for each Employment Practices Claim and Third Party Claim.

8. The Policy defines Loss as "the damages, judgments, settlements, front pay and back pay, pre-judgment or post-judgment interest awarded by a court, and Costs, Charges and Expenses" which include "reasonable and necessary legal costs, charges, fees and expenses incurred by the Insurer, or by any Insured with the Insurer's consent, in defending Claims . . . ." Policy, Employment Practices Section at ¶ B.10, 3.

9. The Employee Insuring Clause in the Policy provides as follows:

> Insurer shall pay the Loss of the Insureds which the Insureds have become legally obligated to pay by reason of an Employment Practices Claim first made against the Insureds during the Policy Period or, if elected, the Extended Period, and reported to the Insurer pursuant to subsection E1 herein, for an Employment Practices Wrongful Act taking place prior to the end of the Policy Period.

*Id.*, Employment Practices Section at ¶ A.1. Employment Practices Claim is defined, in pertinent part, as:

> a civil, judicial, administrative, regulatory or arbitration proceeding against an Insured seeking damages or other relief, commenced by the service of a complaint

or similar pleading, including any appeal therefrom brought by or on behalf of an Employee in their capacity as such.

*Id*., Employment Practices Section at ¶ B.5.b.  Employee includes "any person who was, now is or shall become a full-time or part-time employee of [Nutrabolt]."  *Id*., Employment Practices Section at ¶ B.4.a.  Employment Practices Wrongful Act includes, among other acts, any actual or alleged:

- wrongful discharge or termination of employment, whether actual or constructive; and
- breach of an actual or implied employment contract.

*Id*., Employment Practices Section at ¶ B.6.d, e.

10. Subsection E.1. of the Policy requires Nutrabolt to provide Westchester with written notice of any claim prior to the expiration of the Policy Period.  *Id*., Employment Practices Section at ¶ E.1.  The Policy requires Westchester to defend Nutrabolt from any Employment Practices Claim "even if any of the allegations are groundless, false or fraudulent."  *Id*., Employment Practices Section at ¶¶ F.1, B.1.

**The Underlying Claim and Lawsuit**

11. In March of 2016, Nutrabolt, a nutritional life sciences company and innovator of dietary supplement, sports nutrition and general wellness products, hired Justin Jackson as Senior Vice President of Nutrabolt's online consumer sales division.

12. Certain terms of Jackson's employment were memorialized in a March 24, 2016, offer letter.  In January of 2017, Nutrabolt and Jackson executed an Executive Separation Agreement Addendum detailing the parties' rights and obligations in the event Jackson either (i) was terminated for "cause," (ii) was terminated without "cause," or (iii) resigned for a "good reason," as such terms are defined in the agreement.

13. On August 30, 2017, Nutrabolt terminated Jackson's employment.

3

14. On September 14, 2017, Nutrabolt filed suit against Jackson in the 85th Judicial District Court of Brazos County, Texas under cause number 17-002473-CV-85 seeking a declaration that Jackson had been terminated for "cause" as that term is defined under the employment agreement and asserting a claim for breach of contract due to Jackson's failure to repay amounts due to Nutrabolt in the event of a termination for "cause."

15. On December 29, 2017, Jackson filed a counterclaim seeking, among other things, a declaration that Jackson was terminated without "cause" as that term is defined under the employment agreement and asserting a claim for wrongful termination alleging that Jackson was "demoted and then terminated because he refused to break the law when directed to do so by Nutrabolt." *See* Jackson's Original Counterclaim, a true and correct copy of which is attached as Exhibit 2, at ¶ 32. Jackson seeks front pay and back pay, among other damages, for his alleged wrongful termination. *See id*. at ¶ 36.

**This Coverage Dispute**

16. During the policy period, and while the underlying lawsuit was pending, Nutrabolt timely provided notice of Jackson's counterclaim through its insurance broker and requested defense and indemnity under the Policy.

17. On August 13, 2018, however, Westchester denied coverage and refused to provide a defense for Nutrabolt against Jackson's counterclaim. Despite subsequent efforts by Nutrabolt to get Westchester to reconsider its denial, Westchester maintained its denial of coverage.

**Resolution of Underlying Lawsuit**

18. In or about March of 2019, due to Westchester's failure to defend its insured, Nutrabolt proceeded as a reasonably prudent uninsured and settled the claims against it by Jackson. The terms of the settlement are confidential.

19. As a result of Westchester's failure to provide coverage for its insured, Nutrabolt, under the Policy, including defense costs and indemnity for the settlement payment, Nutrabolt has incurred damages well in excess of the $75,000 jurisdictional threshold. Nutrabolt seeks these damages, plus its attorneys' fees, costs, interest and extra-contractual damages against Westchester as described more fully below.

## CAUSES OF ACTION

A. **COUNT I - BREACH OF CONTRACT AGAINST WESTCHESTER**

20. Nutrabolt incorporates, repeats, reiterates, and realleges each and every allegation set forth in the paragraphs above as if fully set forth herein.

21. The Policy is a valid and enforceable contract. Nutrabolt is an insured under the Policy. Among other duties and obligations in the Policy, Westchester is required to defend Nutrabolt, including payment of defense costs, from claims asserted against Nutrabolt that are potentially covered under the Policy. Westchester also as an obligation to indemnify Nutrabolt for covered losses under the Policy.

22. Westchester breached its obligation to defend Nutrabolt for the claims against it by Jackson. The claims asserted by Jackson against Nutrabolt in his counterclaim alleged a potentially covered claim under the Policy. Specifically, Jackson asserted Loss for which he sought Nutrabolt to become legally obligated to pay by reason of an Employment Practices Claim for an Employment Practices Wrongful Act. Jackson first asserted his counterclaim against Nutrabolt during the policy period and alleged the Employment Practices Wrongful Act took place prior to the end of the policy period. As a result of Westchester's failure to defend Nutrabolt and pay and/or reimburse and/or advance defense costs, Nutrabolt was required to defend itself against Jackson's claims and pay for its own defense costs. Westchester has never paid any of the defense costs. Nutrabolt seeks recovery of these defense costs from Westchester.

23. Westchester also breached its duty to indemnify Nutrabolt for the settlement of the claims by Jackson against Nutrabolt. As a result of this breach, Nutrabolt was required to fend for itself and settle the claims against it. Westchester has never paid for any of the settlement payment by Nutrabolt to Jackson. Nutrabolt seeks recovery from Westchester for the settlement payment to Jackson.

24. All conditions precedent to Westchester's obligations under the Policy have been satisfied.

### B.   COUNT II - VIOLATION OF THE UNFAIR CLAIM SETTLEMENT PRACTICES ACT (CHAPTER 541 OF THE TEXAS INSURANCE CODE) AGAINST WESTCHESTER

25. Nutrabolt incorporates, repeats, reiterates, and realleges each and every allegation set forth in the paragraphs above as if fully set forth herein.

26. By misrepresenting the scope of coverage under the Policy, Westchester has engaged in conduct that violates Chapter 541 of the Texas Insurance Code. Westchester represented that coverage would be available under the Policy for claims against Nutrabolt like the claims asserted against Nutrabolt in the Jackson litigation. Despite these representations and the language in the Policy that provides coverage for such claims, Westchester has denied its obligations under the Policy.

27. Among other acts and/or omissions, Westchester has also violated Chapter 541 by failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of Nutrabolt's claim once Westchester's liability became reasonably clear and by failing to promptly provide Nutrabolt with a reasonable explanation of Westchester's denial of Nutrabolt's claim and of Westchester's refusal to make an offer of settlement.

28. Westchester's actions and/or omissions have violated Chapter 541 of the Texas Insurance Code, including but not limited to Sections 541.051, 541.060, and 541.061. To the

extent Westchester's violations of Chapter 541 of the Texas Insurance Code have been committed knowingly, then in addition to actual damages, costs, and attorneys' fees, Nutrabolt seeks statutory damages of up to three times the actual damages suffered as a result of Westchester's misrepresentations as permitted under Section 541.152.

C. **COUNT III – VIOLATION OF THE PROMPT PAYMENT ACT (CHAPTER 542 OF THE TEXAS INSURANCE CODE) AGAINST WESTCHESTER**

29. Nutrabolt incorporates, repeats, reiterates, and realleges each and every allegation set forth in the paragraphs above as if fully set forth herein.

30. Westchester failed to defend Nutrabolt and pay for, advance, and/or reimburse defense costs for the claims against Nutrabolt in the Jackson litigation. Accordingly, Westchester has engaged in conduct that constitutes violations of Chapter 542 of the Texas Insurance Code. Nutrabolt is entitled to the damages set forth in Section 542.060 of the Texas Insurance Code. Namely, in addition to defense costs incurred to defend the claims against Nutrabolt in the Jackson litigation, Nutrabolt is entitled to interest at the rate of 18 percent per annum on the amount of the claim, plus any and all other relief to which it is entitled.

**ATTORNEYS' FEES**

31. Nutrabolt incorporates, repeats, reiterates, and realleges each and every allegation set forth in the paragraphs above as if fully set forth herein.

32. As a result of Westchester's breaches of contract and/or statutory violations, Nutrabolt has been required to retain legal counsel to enforce Westchester's obligations. Nutrabolt has retained the undersigned counsel. Under Chapter 38 of the Texas Civil Practice and Remedies Code, Chapters 541 and 542 of the Texas Insurance Code, and any other applicable law, Nutrabolt is entitled to recover reasonable and necessary attorneys' fees and costs.

33. All conditions precedent to the recovery of attorneys' fees and costs have been met.

## PRAYER

34. Nutrabolt requests Westchester be cited to appear and answer and that on final trial, the Court enter a final judgment in favor of Nutrabolt for the following relief:

    a.    An award of all damages sustained by Nutrabolt as a result of Westchester's breach of contract;

    b.    An award of all damages sustained as a result of Westchester's violations of Chapter 541 of the Texas Insurance Code, plus additional damages as allowed by statute;

    c.    An award of all damages sustained as a result of Westchester's violation of Chapter 542 of the Texas Insurance Code;

    d.    An award of all pre-judgment interest at the maximum allowable rate under applicable law;

    e.    An award of all post-judgment interest at the maximum allowable rate under applicable law;

    f.    All costs of court and, as contractually and/or statutorily allowed, all other costs incurred by Nutrabolt to enforce recovery of the amounts owed to it by Westchester;

    g.    All reasonable and necessary attorneys' fees; and

    h.    Such other and further relief to which Nutrabolt may be entitled.

Respectfully submitted,

By: /s/ *Darin L. Brooks*
    Darin L. Brooks
    dbrooks@grayreed.com
    Texas Bar No. 00796252
    Federal I.D. No. 22788
    1300 Post Oak Boulevard, Suite 2000
    Houston, Texas 77056
    Telephone: (713) 986-7000
    Facsimile: (713) 986-7100

**ATTORNEY-IN-CHARGE FOR PLAINTIFF WOODBOLT DISTRIBUTION, LLC D/B/A NUTRABOLT**

OF COUNSEL:

Kristen W. Kelly
kkelly@grayreed.com
Texas Bar No. 24046198
Federal I.D. No. 690180
Brian E. Waters
bwaters@grayreed.com
Texas Bar No. 24078035
Federal I.D. No. 2200214
1300 Post Oak Blvd., Suite 2000
Houston, Texas 77056
Telephone: (713) 986-7000
Facsimile: (713) 986-7100

4823-6732-0225.2